IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL RANTE, ) | |
| ) | |
| Plaintiff, ) | No. 05 C 2584 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| CITY OF WOOD DALE, KENNETH JOHNSON, ) | |
| as an individual, and MARSHALL SUBACH, as ) | |
| an individual, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Rante filed a three-count amended complaint against defendants City of Wood Dale ("Wood Dale"), Kenneth Johnson, and Marshall Subach, alleging national origin discrimination under 42 U.S.C. § 1981 (Count I), § 1982 (Count II), and § 1983 (Count III). The parties have filed cross-motions for summary judgment. For the reasons discussed below, the court grants defendants' motion for summary judgment and denies plaintiff's motion.

## **FACTS**[1]

Development History

Plaintiff, a developer, was born in Italy in 1939 and has lived in the United States since 1966. Prior to 2001, plaintiff built three developments in Wood Dale: two multi-tenant buildings and a 6-unit condominium project. In early 2001, plaintiff purchased a five-acre piece of property in Wood Dale from Daniel and Judith Kuesis with the intention of developing it into

---

[1]The following facts are taken from the parties' L.R. 56.1 Statements and accompanying exhibits.

fourteen single family homes. On January 8, 2001, plaintiff filed an application for the subdivision of the property with defendant Wood Dale. Plaintiff alleges that then-City Attorney James Zimmerman ("Zimmerman") gave the subdivision the name "Villa Oaks," but plaintiff's own subdivision application listed the proposed name as "Villa Oaks of Wood Dale."

On January 26, 2001, Roger Nowick, Wood Dale's Community Development Director ("Nowick"), sent plaintiff preliminary engineering plans prepared by the city's consulting engineer, marked "return for corrections." On January 31, 2001, Frank Aiello, an engineer employed by a firm contracted by Wood Dale, advised Nowick that the engineering plans for the subdivision had been approved. On February 5, 2001, Nowick recommended approval of the subdivision to defendant Wood Dale's Plan Commission. That same day, plaintiff appeared before the Plan Commission and presented his development proposal for the subdivision, which the Plan Commission voted to approve, subject to final engineering approval and approval of the Subdivider's Agreement by the City Attorney.

On March 8, 2001, plaintiff attended a meeting of Wood Dale's Building, Zoning and Development Committee. At that meeting, the Committee discussed the naming of a street within the subdivision. Defendant Subach, a Wood Dale alderman, suggested allowing non-profit organizations to bid on the rights to name the street. According to the meeting minutes, the name under consideration as of March 8, 2001, was "Villa Cara."

On March 15, 2001, the Wood Dale City Council, including defendant Subach, voted unanimously to approve plaintiff's proposed subdivision, subject to final engineering approval. The meeting minutes indicate that the subdivision was known at this point as "Villa Cara," although it is unclear to the court when and how the name of the subdivision changed.

2

From April to June of 2001, Aiello exchanged drafts of the engineering plans with James Loeppert ("Loeppert"), plaintiff's retained engineer. On June 20, 2001, Aiello provided plaintiff with a four-page list of items necessary for correction prior to engineering approval by Wood Dale. On June 29, 2001, Zimmerman sent a draft of the proposed Subdivider's Agreement to Lawrence Leavitt ("Leavitt"), plaintiff's real estate attorney. In that draft, the name of the street at issue was listed as "Cara Lane."

On December 6, 2001, Leavitt told Loeppert that his failure to submit the final engineering plans for the subdivision was causing plaintiff economic problems because plaintiff was unable to complete the development project. On May 8, 2002, Aiello wrote a memorandum to Nowick regarding "final engineering plans submitted by Loeppert on behalf of plaintiff. According to that memorandum, Aiello had attempted to contact Loeppert several times regarding deficiencies in the engineering plans, but Loeppert failed to return his calls. On June 10, 2002, Leavitt wrote a letter to Loeppert confirming that Loeppert was "completing all documents necessary for the Villa Cara Project and that [Loeppert] would deliver those documents directly to [Leavitt's] office." On June 17, 2002, Leavitt's partner made a "final demand" to Loeppert for delivery of the final engineering plans. Plaintiff then terminated Loeppert because he was dissatisfied with his performance, specifically because his failure to complete the engineering plans rendered plaintiff unable to obtain building permits from Wood Dale.

On July 11, 2002, Wood Dale's consulting engineer received revised final engineering plans from Haeger Engineering ("Haeger"), retained by plaintiff to replace Loeppert and complete the plans. On September 11, 2002, after several plan drafts, Aiello told Nowick that

the plans were "approved as noted." That same day, plaintiff received a "stop work" notice after Wood Dale discovered that plaintiff was installing water and sanitary sewer mains in the Villa Cara subdivision without the requisite permits of inspections of the work. After several rounds of correspondence among Haeger, Nowick, and Aiello, Haeger submitted revised plans to Aiello on October 24, 2002, which he approved on February 18, 2003.

On or around July 7, 2003, Haeger again submitted revised engineering plans, which had been requested by plaintiff to alter the slopes of the backyards of the subdivisions. On July 17, 2003, Aiello approved the revised plans. Plaintiff received a building permit from defendant Wood Dale on September 18, 2003.

Alleged Acts of Discrimination

Plaintiff alleges that in the course of his dealings concerning the Villa Cara subdivision, he experienced two acts of discrimination, the first of which occurred at a city council meeting unrelated to the subdivision. According to plaintiff, he spoke to Subach prior to the meeting, at which time Subach told him he should consider naming the street at issue after the person who sold him the property. Plaintiff also alleges that during that conversation, other people were present, and Subach stated, "Why can't we quit with all these Italians." Plaintiff acknowledges that Subach made this comment in a joking tone.

Plaintiff also alleges that Subach made a discriminatory comment at a Building, Zoning and Development Committee meeting on May 8, 2003. According to plaintiff, he suggested at the meeting that he name the street in the subdivision after himself, but that Subach told him that naming the street at issue "Rante Circle" was "too much Italian." The court has reviewed a

4

videotape of this meeting, and neither Subach nor anyone else present at the meeting made any such comment or any other comment demonstrating an anti-Italian bias. In fact, several comments were made concerning the "nice Italian theme" of the subdivision, and Subach suggested that plaintiff name the entire subdivision after himself, rather than the street at issue. Subach also stated his belief that Wood Dale should reserve the right to name the street because the city would be responsible for its maintenance.

On May 15, 2003, the City Council approved the subdivider's agreement for Villa Cara, subject to Wood Dale reserving the right to approve the naming of streets. On May 20, 2003, City Attorney Mary Dickson ("Dickson") told Leavitt that Wood Dale had final approval of the naming of all city streets, and that the city would not approve "Rante Circle." Plaintiff conceded to changing the name of the street to Cara Lane, and Dickson told Leavitt she would secure City Council approval for the subdivision. According to plaintiff, the alleged acts of discrimination delayed his development project.

## DISCUSSION

The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c).

5

When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Counts I and II: Individual Defendants

Counts I and II allege violations of plaintiff's civil rights under 42 U.S.C. § 1981 and § 1982, respectively. Section 1981 prohibits racial discrimination in the making and enforcement of contracts, and § 1982 prohibits racial discrimination in transactions involving real or personal property. Courts construe these two provisions as being co-extensive. See, e.g., Runyon v. McCrary, 427 U.S. 160, 169-74 (1976). To prevail on a claim of race discrimination under these statutory provisions, plaintiff must show that: (1) he is a member of a racial minority; (2) the defendants intended to discriminate against him based on his race; and (3) the discrimination concerned an activity protected by the statutes. Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). Courts have interpreted these statutory provisions to include claims of national origin discrimination, such as those brought by plaintiff. See, e.g., St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.").

As defendant Johnson correctly asserts, plaintiff has not presented a single fact concerning any acts of discrimination by Johnson or any effort on his part to delay plaintiff's

construction project. For that reason, the court grants defendant Johnson's motion for summary judgment as to Counts I and II.

As for defendant Subach, plaintiff alleges only that he made comments related to the naming of a street in the subdivision developed by plaintiff. As defendants note, Illinois law grants the power to name streets to municipalities. 65 ILCS 5/11-80-19. For that reason, Subach's objection to plaintiff's naming of a street after himself is not a violation of law and therefore not protected by § 1981 and § 1982. Further, as the court noted above, there is no evidence that Subach stated at the meeting regarding the subdivision that plaintiff's name was "too Italian"; in fact, he suggested that plaintiff name the entire subdivision, rather than the street, after himself.

Finally, plaintiff presents no evidence whatever that Subach made any attempt to delay plaintiff's project, or that his comments had any connection to a delay in the issuance of building permits or other matters connected to the construction of the subdivision. Because plaintiff presents no evidence that Subach caused any delay in the development project, the court grants Subach's motion for summary judgment as to Counts I and II.

Counts I and II: Defendant Wood Dale

To prevail on claims under § 1981 and § 1982, plaintiff must prove that he was intentionally discriminated against in the formation of a contract (in the instant case, involving real property). K.I. Morgan Co., Inc. v. Chicago Transit Authority, 25 F. Supp. 2d 886, 890 (N.D. Ill. 1998). A municipality cannot be held liable under the theory of respondeat superior for the actions of its employees in forming that contract. Rather, it can be held liable only by

7

means of a discriminatory policy. Id. There are three instances when such a policy violates a person's civil rights: "(1) an express policy that, when followed, deprives a person of his or her constitutional rights; (2) a widespread practice that, though not authorized by an express policy or written law, 'is so permanent and well-settled' as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" Id., quoting Baxter v. Vigo County School Corp., 26 .3d 728, 734-35 (7th Cir. 1994).

In the instant case, there is no evidence that Wood Dale had a policy of discriminating against individuals in the formation of real estate contracts because of their national origins. Plaintiff presents no evidence of such a policy, explicit or otherwise. The complaint refers to a policy of discrimination only in the section alleging statutory violations; nowhere in the complaint does plaintiff allege facts supporting the existence of such a policy. Plaintiff "may not rely on conclusory allegations or speculation alone to oppose summary judgment." Darovec Marketing Group, Inc. v. Bio-Genics, Inc., 114 F. Supp. 2d 752, 763 (N.D. Ill. 2000), citing Anderson v. Stauffer Chemical Co., 965 F.2d 397, 402 (7th Cir. 1992). Because plaintiff has presented no facts regarding an alleged policy of discrimination, the court grants defendant Wood Dale's motion for summary judgment as to Counts I and II.

Count III: Individual Defendants

Plaintiff alleges that defendants Johnson and Subach discriminated against him in violation of his civil rights pursuant to § 1983. To prevail on such a claim, plaintiff must show that these defendants "purposefully discriminated against him because of his identification with a

particular (presumably historically disadvantaged) group." Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir. 1994).

As discussed above, plaintiff presents not a scintilla of evidence that Johnson acted in any way to delay plaintiff's development project or otherwise discriminate against him. Similarly, plaintiff has provided no evidence that Subach's alleged comments were in any way related to the delay in plaintiff's construction. For that reason, the court grants summary judgment on Count III as to defendants Johnson and Subach.

Count III: Defendant Wood Dale

Count III of the complaint alleges that Wood Dale has a policy of discrimination against individuals of Italian descent in violation of plaintiff's equal protection rights under § 1983. As discussed above, plaintiff can prevail on this claim only by demonstrating that defendant Wood Dale deprived him of his constitutional rights pursuant to an official government policy or custom. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978). Once again, plaintiff has not provided any facts to support his conclusory allegations that Wood Dale has a policy of discrimination. For that reason, the courts grants defendant Wood Dale's motion for summary judgment as to Count III.

## **CONCLUSION**

For the reasons discussed above, the court grants defendants' motion for summary judgment on all counts and denies plaintiff's motion. Judgment is hereby entered for defendants Wood Dale, Johnson and Subach and against plaintiff Michael Rante.

**ENTER:** February 5, 2008

_____
**Robert W. Gettleman**
**United States District Judge**